## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION - DAYTON

| | | |
|---|---|---|
| **HUNTER HOTT,** | : | **CASE NO. 3:24-cv-231** |
| **PLAINTIFF,** | : | **JUDGE** |
| V. | : | |
| **VILLAGE OF MECHANICSBURG,** | : | |
| **AND** | : | **COMPLAINT WITH JURY DEMAND** |
| **ROBERT MCCONNELL,** | : | |
| **DEFENDANTS.** | : | |

## PRELIMINARY STATEMENT

1. This case challenges the unlawful and injurious governmental intrusion into the life of Hunter Hott.

2. Mr. Hott was unlawfully assaulted, tased, handcuffed, detained, and charged with crimes he did not commit by Mechanicsburg Police Officer Robert McConnell.

3. McConnell has a history of aggressive policing tactics, including falsely accusing citizens of crimes, unlawfully arresting citizens, and using excessive and unlawful force upon innocent citizens.

4. McConnell has worked in at least five different police departments over the last twelve years.

5. McConnell first served as a police officer for the Village of Saint Paris in Champaign County, Ohio from 2012-2013.

1

6. Within six months of being employed by the Village of St. Paris, a news article in the Springfield News-Sun reported that the Village Police Chief had received several complaints regarding McConnell and that a citizen had obtained 50 signatures on a petition to remove McConnell from the police department. See, [Village residents complain about police officer (springfieldnewssun.com)](springfieldnewssun.com).

7. After his one-year stint in St. Paris, McConnell worked as a police officer in Union City Ohio from 2013-2014. McConnell then moved to the Minster, Ohio police department where he stayed for just five months.

8. McConnell left Minster and began his first stint as an officer in the Village of Mechanicsburg in August 2015.

9. In the one year he was initially employed by the Village of Mechanicsburg, McConnell was disciplined for repeatedly failing to follow orders and making a false arrest.

10. After an internal investigation, the Village of Mechanicsburg asked to McConnell to resign from his position as a police officer in September 2016.

11. After resigning from his position with the Village of Mechanicsburg, McConnell applied for a position with the Village of Elmwood Place police department. On his application, McConnell represented that, "I was asked to resign (from Mechanicsburg) because I was too proactive and wrote too many tickets." He further wrote, "I am a very proactive police officer. I have always been the officer that makes a lot of arrests and writes a lot of traffic tickets."

12. Despite his record, McConnell was hired by the Village of Elmwood Place in December 2016 – his fifth police department in less than five years.

13. In every community where McConnell worked, residents complained he was too aggressive and wrote too many tickets.

14. In his first year on the job in the Village of Elmwood Place, McConnell deployed his taser on a woman he claimed closed her car door on his leg, pulled the woman from the car, and cuffed her while she was face down on the pavement. He charged the woman with resisting arrest and obstructing police, but the charges were later dismissed.

15. This incident was the subject of an investigative report aired on the local ABC channel in Cincinnati, Ohio. See, https://www.youtube.com/watch?v=JgglZm2I9Ak.

16. Nevertheless, four months later, the Village of Elmwood Place promoted McConnell to the rank of detective.

17. In 2020, McConnell was again the subject of local reporting for his aggressive police actions, which resulted in a federal lawsuit filed against McConnell and the Village of Elmwood Place. See, https://www.cincinnati.com/story/news/2020/06/15/lawsuit-black-man-who-works-amazon-wrongfully-detained-charged/3174814001/.

18. Despite McConnell's well-documented history of unlawful policing prior to his initial stint with the Village of Mechanicsburg, during his initial stint at Mechanicsburg, and subsequent to him being asked to resign from Mechanicsburg, Mechanicsburg inexplicably rehired McConnell as a police officer.

19. The citizens of Mechanicsburg took notice. A Facebook Group was started to bring awareness in the community to McConnell's return, and advocate for his termination.

20. Despite ample documentation of McConnell's unlawful policing, and the public outcry from its citizens, Mechanicsburg continues to employ McConnell to this day.

21. By way of this case, Mr. Hott wishes to again bring light to McConnell's actions in the hope that he can prevent future citizens from suffering injuries, or worse, at the hands of McConnell. Mr. Hott seeks to vindicate these rights and hold the Defendants accountable for their

violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION AND VENUE

22. This Court has jurisdiction under 28 U.S.C. § 1331 because of the federal claims involved including those arising under the United States Constitution and 42 U.S.C. § 1983.

23. This Court has supplemental jurisdiction over the state law claims involved under 28 U.S.C. § 1367.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the Defendants are located within this District, and the conduct complained of occurred within this District.

## PARTIES

25. Plaintiff Hunter Hott is a citizen of the State of Ohio and resides within this District.

26. Defendant Robert McConnell is employed as a police officer by the Village of Mechanicsburg in Champaign County, Ohio. During the relevant periods of time herein, McConnell was responsible for the investigation, stop, detention, arrest, and filing of charges against Mr. Hott.

27. Defendant the Village of Mechanicsburg (the "Village") is a municipal corporation located in Champaign County, and within this District.

28. All actions and omissions set forth herein by all Defendants were done under the color of state law.

# FACTS

29. Mr. Hott resides in West Liberty, Ohio and works as a mechanic in Columbus, Ohio. He typically leaves his home around 6:00 a.m. to make the one-hour commute to Columbus to start work at 7:00 a.m.

30. On October 11, 2023, Mr. Hott completed his shift at 5:00 p.m. and began his drive back to his home in West Liberty.

31. On the drive home, Mr. Hott started to feel drowsy and decided to pull off the road instead of endangering himself and other drivers.

32. At approximately 5:30 p.m. Mr. Hott parked his car in front of the United States Postal Service office in Mechanicsburg, Ohio. He placed the car in park, engaged the parking brake, and left the radio on to drown out the noise of the traffic so he could rest.

33. At approximately 5:55 p.m., McConnell approached Mr. Hott's vehicle and shouted through the open sunroof startling Mr. Hott awake.

34. McConnell claimed the reason for confronting Mr. Hott was that his license plate was not visible, though it was clearly displayed in the back window of Mr. Hott's vehicle.

35. After confronting Mr. Hott, McConnell proceeded to subject Mr. Hott to a series of questions that McConnell claimed were intended to determine whether Mr. Hott was sober.

36. Despite being jolted from his sleep by a police officer speaking through the sunroof of his car, Mr. Hott gathered himself and ably responded to all of McConnell's instructions.

37. McConnell then returned to his police cruiser to watch the body camera footage of the interaction that he had just completed with Mr. Hott.

38. The body camera audio of this interaction is drowned out by the passing traffic. It provides no evidence that Mr. Hott was unable to respond to McConnell's questions. The only

insight McConnell could have obtained from watching the video immediately after his questioning was to verify that the video could not prevent him from detaining Mr. Hott further because it would not be clear enough to dispute McConnell's fabricated version of the interaction.

39. After watching the body camera video, McConnell returned to Mr. Hott's car and falsely informed Mr. Hott that the video evidenced Mr. Hott making numerous "mistakes" while responding to McConnell's questions.

40. McConnell then informed Mr. Hott, "what I am going to ask you to do next is, I am going to ask you to do field sobriety."

41. Mr. Hott asked if he was being accused of something, to which McConnell responded, "I think you are under the influence of drugs or alcohol."

42. Throughout this interaction, Mr. Hott spoke clearly and calmly and politely requested that McConnell call a supervising officer to the scene.

43. Despite being less than a block from the police department where Chief Patrick was located, McConnell stated there was no supervising officer and that he was the lieutenant of the patrol. He then stated, "do you want to do field sobriety?" to which Mr. Hott calmly replied, "I do not want to do field sobriety."

44. Without any further discussion, McConnell stated, "step out of the car, you are under arrest."

45. Without giving Mr. Hott a chance to respond, McConnel then opened Mr. Hott's door, put his hands on Mr. Hott and forcefully removed him from the car.

46. Mr. Hott, while obviously shocked by what was happening to him, remained calm and did not resist McConnell whatsoever. He continued to refer to McConnell as "sir" and asked, "am I being accused of a crime?"

6

47. McConnell turned Mr. Hott around and pushed him into his car and responded, "You're going to get tased."

48. Mr. Hott continuing to comply with McConell, repeatedly asked "Am I being accused of a crime?'

49. McConnell did not respond, pulled out his taser, placed it against Mr. Hott's back, and ordered Mr. Hott to "place your hands behind your back."

50. As Mr. Hott put one arm behind his back, he continued to ask for a supervising officer, at which point McConnell deployed his taser into Mr. Hott's back.

51. Mr. Hott fell to the roadway pavement in agony upon being tased.

52. McConnell then tightly clamped two sets of handcuffs around Mr. Hott's wrists.

53. At no point during the interaction was Mr. Hott disrespectful and at no point did he physically resist McConnell.

54. Nevertheless, within seconds of Mr. Hott asking for a supervising officer, McConnell had forcibly removed Mr. Hott from his car and unjustifiably deployed a taser into his back.

55. McConnell charged Mr. Hott with Operating a Vehicle under the Influence, Obstructing Official Business, and Resisting Arrest.

56. He was taken to the local jail where he submitted to drug and alcohol urine screening and held overnight before he could get out on bail the following day.

57. The drug and alcohol test results ultimately confirmed that Mr. Hott had consumed zero drugs or alcohol.

58. After receiving the lab results, the prosecutors dropped all criminal charges against Mr. Hott.

59. The unlawful conduct described above constitutes violations of Mr. Hott's Fourth, Fifth, and Fourteenth Amendment rights.

60. The unlawful conduct described above has caused Mr. Hott to suffer severe emotional distress including, without limitation, severe anxiety and mistrust in dealing with government and authority figures.

## FIRST CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Excessive Force
### McConnell

61. Mr. Hott incorporates the foregoing allegations as if fully restated here.

62. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

63. In view of all the circumstances surrounding the incident, McConnell's use of force against Mr. Hott was unwarranted.

64. In view of all the circumstances surrounding the incident, McConnell's action in grabbing Mr. Hott's wrist, jerking him out of his car, and pinning him against the car constituted the use of excessive force.

65. In view of all the circumstances surrounding the incident, McConnell's deployment of his taser into Mr. Hott's back in light of no immediate or articulable threat to McConnell existing constituted the use of excessive force.

66. McConnell, while operating under the color of state law, deprived Mr. Hott of the rights, privileges and immunities secured by the Fourth Amendment to the Constitution of the United States.

67. As a direct and proximate result of McConnell's violations or deprivations of the rights, privileges and immunities of Mr. Hott that are secured by the United States Constitution, Mr. Hott has suffered damages.

## SECOND CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Excessive Force
### Village of Mechanicsburg

68. Mr. Hott incorporates the foregoing allegations as if fully restated here.

69. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

70. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

71. The Village has unconstitutional customs, policies, and procedures relating to the use of force against persons within its jurisdiction.

72. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the use of force by officers against persons.

73. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the use of force against persons amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

74. The Village ignored prior incidents involving the use of excessive force by its police officers, including McConnell, and was on notice that the lack of training and/or supervision in this area would likely result in injury.

75. Upon information and belief, McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Hott of his constitutional rights.

76. As a direct and proximate result of the conduct of the Village, Mr. Hott suffered a deprivation of his constitutional rights and damages.

## THIRD CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Illegal Search & Seizure
### McConnell

77. Mr. Hott incorporates the foregoing allegations as if fully restated here.

78. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

79. In view of all the circumstances surrounding the incident, the stop, detention, and arrest of Mr. Hott was unwarranted.

80. In view of all the circumstances surrounding the incident, the forceful removal of Mr. Hott from his vehicle, tasing of Mr. Hott, placement of Mr. Hott into handcuffs, the timing of placing him in handcuffs, the use and/or continued use of handcuffs on Mr. Hott in light of no immediate or articulable threat to Sgt. McConnell existing, the continued or extended use of handcuffs on Mr. Hott even after the facts and circumstances should have dispelled any suspicions or hunches, and the search of Mr. Hott exceeded the permissible scope of any putative *Terry* stop, as well as made the actions of Sgt. McConnell not the least intrusive means reasonably available to verify or dispel any suspicion or hunch.

81. The detention and continued detention of Mr. Hott constituted an arrest without probable cause.

82. The search of Mr. Hott while in handcuffs constitutes a warrantless search that was not premised upon probable cause or exigent circumstances.

83. McConnell, while operating under the color of state law, deprived Mr. Hott of the rights, privileges and immunities secured by Fourth Amendment to the Constitution of the United States.

84. As a direct and proximate result of Defendants' violations or deprivations of the rights, privileges and immunities of Mr. Hott that are secured by the United States Constitution, Mr. Hott has suffered damages.

**FOURTH CLAIM FOR RELIEF**
**Violation of Fourth Amendment Rights – Illegal Search & Seizure**
**Village of Mechanicsburg**

85. Mr. Hott incorporates the foregoing allegations as if fully restated here.

86. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

87. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

88. The Village has unconstitutional customs, policies, and procedures relating to the search and seizure of persons within its jurisdiction.

89. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the search and seizure of persons within its jurisdiction.

90. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the search and seizure of persons amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

91. The Village ignored prior incidents involving illegal search and seizures by its police officers, including McConnell, and was on notice that the lack of training and/or supervision in this area would likely result in injury.

92. Upon information and belief, McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Hott of his constitutional rights.

93. As a direct and proximate result of the conduct of the Village, Mr. Hott suffered a deprivation of his constitutional rights and damages.

## FIFTH CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Malicious Prosecution
### McConnell

94. Mr. Hott incorporates the foregoing allegations as if fully restated here.

95. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

96. McConnell was operating under the color of law during the incident with Mr. Hott.

97. McConnell initiated criminal proceedings against Mr. Hott without probable cause.

98. McConnell initiated criminal proceedings against Mr. Hott based on facts which he knew to be false.

99. Mr. Hott suffered a deprivation of liberty as a result of the criminal proceedings initiated against him.

100. The criminal proceeding was resolved in Mr. Hott's favor.

101. As a direct and proximate result of Defendants' violations or deprivations of the rights, privileges and immunities of Mr. Hott that are secured by the United States Constitution, Mr. Hott has suffered damages.

**SIXTH CLAIM FOR RELIEF**
**Violation of Fourth Amendment Rights – Malicious Prosecution**
**Village of Mechanicsburg**

102. Mr. Hott incorporates the foregoing allegations as if fully restated here.

103. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

104. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

105. The Village has unconstitutional customs, policies, and procedures relating to the prosecution of persons without probable cause.

106. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the prosecution of persons without probable cause.

107. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the prosecution of persons without probable cause amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

108. The Village ignored prior incidents involving the prosecution of persons without probable cause and was on notice that the lack of training and/or supervision in this area would likely result in injury.

109. Upon information and belief, McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Hott of his constitutional rights.

110. As a direct and proximate result of the conduct of the Village, Mr. Hott suffered a deprivation of his constitutional rights and damages.

**SEVENTH CLAIM FOR RELIEF**
**False Arrest / False Imprisonment**
**McConnell**

111. Mr. Hott incorporates the foregoing allegations as if fully restated here.

112. This tort action arises under the common law of the State of Ohio.

113. McConnell intentionally and unlawfully confined or detained Mr. Hott within a limited area, for an appreciable time, against his will and without lawful justification.

114. In intentionally and unlawfully confining or detaining Mr. Hott, McConnell acted maliciously, in bad faith, or in a wanton or reckless manner with respect to the rights and interests of Mr. Hott.

115. As a direct and proximate result of the foregoing conduct of McConnell, Mr. Hott has suffered damages.

**EIGHTH CLAIM FOR RELIEF**
**Malicious Prosecution**
**McConnell**

116. Mr. Hott incorporates the foregoing allegations as if fully restated here.

117. This tort action arises under the common law of the State of Ohio.

118. McConnell instituted criminal proceedings against Mr. Hott that were terminated in Mr. Hott's favor.

119. McConnell lacked probable cause to institute criminal proceedings against Mr. Hott.

120. McConnell acted with malice or with a purpose other than to bring Mr. Hott to justice.

121. As a direct and proximate result of McConnell's malicious prosecution, Mr. Hott suffered damages including a deprivation of his liberty.

## NINTH CLAIM FOR RELIEF
### Assault and Battery
### McConnell

122. Mr. Hott incorporates the foregoing allegations as if fully restated here.

123. This tort action arises under the common law of the State of Ohio.

124. McConnell intended to, and did, cause Mr. Hott to suffer fear and apprehension when he stood over Mr. Hott at the driver's side door of his vehicle.

125. McConnell intended to, and did, cause harmful or offensive contact to Mr. Hott when he forcefully removed Mr. Hott from his vehicle, pinned him against the vehicle with his hands behind his back and deployed his taser into Mr. Hott's back.

126. In view of all the circumstances surrounding the incident, a reasonable person would find the conduct of McConnell to be harmful and offensive.

127. As a direct and proximate result of the assault and battery by McConnell, Mr. Hott has suffered damages.

**WHEREFORE**, Mr. Hott prays that the Court enter judgment in his favor and against the Defendants as follows:

(1) Granting compensatory damages against all Defendants in an amount to be determined at trial;

(2) Granting punitive damages against Defendants in an amount to be determined at trial;

(3) Awarding Mr. Hott his attorney fees and costs pursuant to 42 U.S.C. §1988; and,

(4) Granting any other relief to which Mr. Hott may be entitled in law or in equity.

Respectfully submitted,

*/s/ Bradley M. Gibson*

Bradley M. Gibson (0087109)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd. Suite 225
Cincinnati, OH 45245
Telephone: (513) 943-6661
Facsimile: (513) 943-6669
Email: brad@finneylawfirm.com

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury.

*/s/ Bradley M. Gibson*

Bradley M. Gibson (0087109)

16