UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

HUNTER HOTT,

Plaintiff, Case No. 3:24-cv-231

vs.

VILLAGE OF MECHANICSBURG, *et al.*, District Judge Michael J. Newman

Defendants.

---

**ORDER: (1) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO ALL OF PLAINTIFF'S FEDERAL CLAIMS (Doc. Nos. 32, 33); (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S STATE-LAW CLAIMS; AND (3) TERMINATING THIS CASE ON THE DOCKET**

---

This civil case arises from the police response to Plaintiff Hunter Hott ("Hott"), who was sleeping in a running vehicle while parked on the main road in the Village of Mechanicsburg, Ohio. *See infra*, § I. Defendant Officer Robert McConnell ("McConnell") initially investigated the scene. *Id*. McConnell asked Hott to perform sobriety tests. *Id*. McConnell, after determining that Hott may be under the influence of alcohol or drugs, asked Hott to step out of the vehicle to complete more sobriety tests. *Id*. Hott refused. *Id*. McConnell then asked Hott to exit the vehicle and placed him under arrest. *Id*. After Hott resisted, McConnell warned Hott twice that he would deploy a taser if he continued to resist. *Id*. Hott asserts McConnell used excessive force—including, in part, tasering Hott in the back—to subdue and arrest him. *See id*.

Hott brings this case, through counsel, under 42 U.S.C. § 1983 claiming Defendants—the Village of Mechanicsburg and McConnell—violated his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Doc. No. 1. Hott also brings state-law claims of false arrest, malicious prosecution, and assault and battery solely against McConnell. *Id*.

The case is before the Court, following discovery, upon the Defendants' respective motions for summary judgment (Doc. Nos. 32, 33), Hott's combined memoranda in opposition (Doc. No. 39), and Defendants' replies (Doc. Nos. 42, 43). The motions for summary judgment are now ripe for review. For the reasons included herein, the Court **GRANTS** both motions for summary judgment as to Hott's federal claims, **DISMISSES WITHOUT PREJUDICE** Hott's state-law claims, and **TERMINATES** this case on the docket.

## I. Undisputed Facts

The following factual discussion rests upon the evidence submitted in support of the Defendants' motions for summary judgment. This includes, among other items, video footage from McConnell's body-worn camera, which the Court has carefully reviewed, as well as depositions from both Hott and McConnell.

Ordinarily, as in this case, when a motion for summary judgment is based on qualified immunity, the Court views the facts in the light most favorable to the plaintiff. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (citing *Scott v. Harris,* 550 U.S. 372, 378 (2007)). However, given the video of Hott's arrest from body camera footage, the following factual discussion is mainly based on the facts "in the light depicted" by the video evidence. *Scott*, 550 U.S. at 380–81; *see Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017). Still, "any relevant gaps or uncertainties left by the videos [are viewed] in the light most favorable to the Plaintiff." *Latits*, 878 F.3d at 544 (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

### A. The Initial Events

On October 11, 2023, Hott began traveling home to West Liberty, Ohio from his job in Hilliard, Ohio between 5:00 PM and 5:15 PM. Doc. No. 26 at PageID 108, 117, 145–46. Hott's commute was just over an hour, and his route took him through the Village of Mechanicsburg. *Id.*

at PageID 110, 147. Hott felt tired and decided it would be dangerous to continue driving. *Id.* at PageID 150. He pulled over to take a nap on the main road in Mechanicsburg (*i.e.*, Main Street). *Id.* at PageID 150–51. At the time in question, that road was busy with rush hour traffic. Doc. No. 28 at PageID 504–05.

Hott testified that he was on the right-hand side of the road, and the car was not at a meter or paid parking spot. Doc. No. 26 at PageID 151. When he fell asleep, his doors were locked, his engine and radio were on, and his sunroof was open. *Id.* at PageID 151–52. Hott estimated that it was between 6:30 PM and 6:40 PM when he parked. *Id.* at PageID 153. By his estimation, he was asleep for 10 to 20 minutes before McConnell approached his car. *Id.* at PageID 154.

**B. The Traffic Stop**

McConnell began full-time employment as a Lieutenant in Mechanicsburg in August or September 2022 and is currently still a lieutenant-rank police officer. Doc. No. 28 at PageID 429, 453. Throughout these events, he was the only officer on the scene. *See* Doc. No. 26. Video footage from McConnell's body camera reveals that he approached Hott in his vehicle and said "Hunter" to get his attention. McConnell Video 1, Ex. A, Initial_Contact_Video_1; *see* Doc. No. 26 at PageID 156. Hott woke up when he heard his name and jumped. McConnell Video 1; *see* Doc. No. 26 at PageID 156. Hott testified that he was groggy and disoriented from being woken up so suddenly. Doc. No. 26 at PageID 157.

McConnell told Hott not to drive off and proceeded to ask him questions through the open sunroof. McConnell Video 1. McConnell then asked him to perform three divided attention sobriety exercises: (1) counting backwards from one number to another, (2) reciting the alphabet from one letter to another, and (3) performing a finger motility test. McConnell Video 1; *see* Doc. No. 26 at PageID 159–60. McConnell thereafter took Hott's license to his cruiser to run Hott's

information. McConnell Video 1; Doc. No. 26 at PageID 162. He also reviewed McConnell's sobriety tests on his body camera footage to confirm his live impression of Hott's performance. McConnell Video 1; Doc. No. 28 at PageID 460–61, 477.

McConnell believed Hott did not do well on two of the three exercises (Doc. No. 28 at PageID 460), so he approached Hott again to conduct additional sobriety testing (*Id.* at PageID 461; *see* McConnell Video 1).

**C. Hott's Arrest and Tasing**

Once McConnell reached Hott's vehicle, he asked Hott to turn the vehicle off. McConnell Video 2, Ex. B, Arrest_Video_2; Doc. No. 28 at PageID 484. He then asked Hott to step out of the car to do a field sobriety test. McConnell Video 2; Doc. No. 28 at PageID 485. Hott did not comply with McConnell's request and requested to speak to a supervisor. McConnell Video 2. At that time, McConnell believed that his supervisor, Chief David Patrick, had finished his shift, so he did not attempt to contact Chief Patrick as he would usually do. Doc. No. 28 at PageID 487.

McConnell told Hott, "Step out of the car. You're under arrest." McConnell Video 2. Hott responded, "Why am I under arrest?" and did not comply, so McConnell opened Hott's door. *Id.* McConnell proceeded to pull Hott out of his car by grasping his left shoulder and left wrist and directing him out of the car. *Id.* During this, Hott said, "Sir, I am not doing anything wrong." *Id.* McConnell repeated, "Get out of the car; put your hands behind your back." *Id.* Hott asked, "Am I being accused of a crime?" *Id.* McConnell directed Hott to stand facing the rear driver's side door of the vehicle, with McConnell standing behind Hott. *Id.*

McConnell repeatedly stated, "Put your hands behind your back; you're under arrest" while Hott continued to repeat, "Am I being accused of a crime?" *Id.* McConnell was able to secure Hott's left hand behind his back, but Hott's right hand and arm remained above the vehicle. *Id.*

McConnell warned Hott "You're gonna get tased." *Id.* When Hott did not comply, McConnell placed his taser at Hott's back and warned him again that he was "going to get tased" and to "put his hands behind his back." *Id.* During this, Hott continued to say, "Am I being accused of a crime?" and "I demand to speak to a supervising officer." *Id.* After his second warning, McConnell tased Hott in his back. *Id.*

After being tased, Hott fell to the ground on his stomach and shouted "Ow! What the f-ck, dude? What the f-ck? Ow! I didn't do anything. I demanded to speak to a supervising officer; what is wrong with you? What is wrong with you? I did not fight you whatsoever. What is your problem? What is your problem, dude?" *Id.* McConnell handcuffed Hott behind his back and then stated "Taser deployed" into his radio. *Id.*

McConnell helped Hott stand and, as he escorted him to a patrol car, Hott continued to demand to speak to a supervising officer. *Id.* At one point, Hott said, referring to his demand to speak to a supervisor, "I have that right. I am a free citizen, and I haven't committed any crimes." *Id.* Chief Patrick arrived on the scene and did not express any disapproval of McConnell's conduct at the time. Nor did he later discipline McConnell for the traffic stop or tasering. *Id.*; Doc. No. 28 at PageID 501–02.

**D. Hott's Injuries and Resulting Events**

Hott was evaluated at the scene of the incident by EMS. McConnell Video 3, Ex. C, Hunter_Hott_Video_3; Doc. No. 26 at PageID 181. After the medical team evaluated Hott, they concluded that he was fine to be transported to the local jail. McConnell Video 4, Ex. C, Hunter_Hott_Video_4; Doc. No. 26 at PageID 181. He was taken there and charged with operating a vehicle under the influence, obstructing official business, and resisting arrest. McConnell Video 4; Doc. No. 26 at PageID 178. During intake, Hott submitted to a drug and alcohol urine screening.

McConnell Video 4; *id.* at PageID 177; *see* McConnell Video 3. He was held "four or five hours" and released after posting bond "sometime after midnight." Doc. No. 26 at PageID 177. Ultimately, the test results showed that Hott did not have any drugs or alcohol in his system. Doc. No. 28 at PageID 492; Doc. No. 29 at PageID 573. Thereafter, the prosecution dropped the criminal charges against Hott. Doc. No. 29 at 574.

Hott claims the incident caused him to suffer severe emotional distress, including severe anxiety and "mistrust in dealing with government and authority figures." Doc. No. 1 at PageID 8. He has received counseling from two pastors relating to this incident. Doc. No. 26 at PageID 184.

**II. Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that no genuine issue of material fact is present, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the summary-judgment stage, the burden is first on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations or admissions, interrogatory answers, or other materials," or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See*

Fed. R. Civ. P. 56(c)(1)(A) and (B) (citation modified). Once the moving party accomplishes this, "the non-moving party may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citation modified). "There is no duty imposed upon the trial court to search the entire record to establish that it is bereft of a genuine issue of material fact." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citation modified). Instead, "the free-ranging search for supporting facts is a task for which attorneys ... are equipped and for which courts generally are not." *Id.* at 406.

## III.

### A. Defendants' Arguments

McConnell contends qualified immunity shields him from individual liability because Hott has not identified a violation of his constitutional rights under clearly established law. Doc. No. 32 at PageID 1224. The Village of Mechanicsburg argues there is no evidence to establish the elements of Plaintiff's *Monell* claims. Doc. No. 33 at PageID 1245.

### B. Section 1983 and Qualified Immunity

Hott's federal constitutional claims arise under 42 U.S.C. § 1983. To establish a § 1983 claim, he must show: (1) a violation of his rights secured by the Constitution or laws of the United States; and (2) a person acting under color of state law violated his federal constitutional rights. *Littler v. Ohio Ass'n of Pub. School Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

The parties do not contest that McConnell acted under the color of state law at the relevant times in this case. *See* Doc. Nos. 32, 33, 39. McConnell instead contends Hott has not shown a violation of his constitutional rights under clearly established law and qualified immunity shields

him from Hott's § 1983 claims. *See* Doc. No. 32.

"'Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known.'" *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

A two-pronged inquiry determines whether a defendant is entitled to qualified immunity: (1) "whether the facts that a plaintiff has … shown ... make out a violation of a constitutional right[;]" and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Hopkins v. Nichols*, 37 F.4th 1110, 1115 (6th Cir. 2022) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Plaintiffs generally bear the burden to satisfy both qualified immunity prongs. *See Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018). "In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a genuine issue of fact; that is, evidence on which a jury could reasonably find for the plaintiff." *Id.* (citation modified) (quoting *Anderson*, 477 U.S. at 252).

**C. Governmental Liability under *Monell***

Under the *Monell*[1] standard, a plaintiff may use one of four avenues in establishing governmental liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

A plaintiff's failure to show an underlying constitutional violation, however, means that

---

[1] *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

the *Monell* claims cannot succeed. *See Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023) ("[T]here can be no liability under *Monell* without an underlying constitutional violation"); *Hunsperger v. Tuscarawas Cnty.*, No. 5:22-cv-00326, 2024 WL 3992275, at *4 (N.D. Ohio Aug. 28, 2024) (and cases cited therein).

## IV. Analysis

### A. Defendant McConnell

McConnell contends that summary judgment is warranted in his favor based on qualified immunity because (1) Hott fails to meet his burden of showing McConnell violated his clearly established constitutional rights; and (2) even if Hott can show that McConnell violated his clearly established constitutional rights, a reasonable officer in the same position would not have known he was violating a constitutional right. Doc. No. 32 at PageID 1223–29.

"[I]t is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff*, 791 F.3d at 641 (emphasis in original); *see also Williams v. Sandel*, 433 Fed. App'x 353, 362-63 (6th Cir. 2011) (holding it is not excessive force to tase the suspect thirty-seven times, use batons, and pepper spray because he actively resisted arrest). Active resistance includes "refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff*, 791 F.3d at 641 (citing *Caie v. W. Bloomfield Twp.*, 485 Fed. App'x 92, 94, 96–97 (6th Cir. 2012)). It also includes "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 Fed. App'x 491, 495–96 (6th Cir. 2012) (collecting cases); *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (finding that plaintiff actively resisted when he repeatedly pulled his arm away from an officer to avoid handcuffing, even after officer warned he would be tased if he did not comply); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509–12 (6th Cir. 2012) (collecting

cases) (finding plaintiff actively resisted when officers tased plaintiff who refused to allow officers to secure his arms behind his back).

Conversely, a suspect does not actively resist arrest when he or she becomes compliant, does nothing to resist arrest, or is already detained. *Cf. Hagans*, 695 F.3d at 509; *Kijowski v. City of Niles*, 372 Fed. App'x 595, 599-600 (6th Cir. 2010) (no resistance); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (excessive force occurred when officers pepper sprayed a plaintiff who was handcuffed, had stopped resisting arrest, and posed no flight risk).

McConnell did not violate Hott's constitutional rights by tasing him once to assist in subduing him. McConnell's video shows that Hott protested leaving his vehicle. McConnell Video 2. McConnell instructed Hott, once he got out of the vehicle, to put his hands behind his back. *Id.* Hott kept his right hand and arm in the air, above the vehicle in front of him. *Id.* McConnell instructed Hott multiple times to place his hands behind his back, but Hott refused to comply. *Id.* Hott continuously yelled at McConnell, demanding to speak to a supervisor. *Id.* McConnell warned Hott, as he tried to secure his right arm, that he would be tasered if Hott did not comply. *Id*. Hott did not comply with McConnell's repeated orders. *Id.* McConnell testified he was concerned with Hott's second arm continuing to be unsecured because they were both on the edge of a state route and Hott could have pushed him backward towards rush hour traffic. Doc. No. 28 at PageID 496–97. After McConnell gave Hott a second warning[2] that he would deploy his taser, McConnell tased Hott once. *Id.*; McConnell Video 2.

For safety reasons, it was reasonable for McConnell to order Hott to put his hands behind his back and to use physical force to do so when Hott refused and physically resisted. As McConnell testified, "[i]f he moves that hand in a swift motion back, I'm going into rush hour

[2] Video evidence shows there was time for Hott to comply with the orders between the first and second warning and the single use of the taser. *See* McConnell Video 2.

traffic[,] and I'm getting hit[,] and I'm potentially getting killed, not going home." Doc. No. 28 at PageID 497; *see also* Doc. No. 29 at PageID 575 (Chief David Patrick, Mechanicsburg Police Department's Police Chief, testified, "It could be perceived as a dangerous situation for Officer McConnell…that the person did not immediately comply").

Under the totality of the circumstances, including Hott's physical resistance, his noncompliance with the officer's order to get out of the vehicle, his noncompliance with the officer's order to put his hands behind his back, his insistence to talk with a supervisor before cooperating with the officer's reasonable instruction, the danger posed to the officer and Hott being on the edge of a busy state route, and the difficulty the officer had in physically handcuffing Hott due to his physical resistance, an objective officer in McConnell's situation would understand that tasing Hott would not constitute an excessive or unreasonable use of force. *See Rudlaff*, 791 F.3d at 641; *Bell*, 37 F.4th at 368 (6th Cir. 2022); *Cockrell*, 468 Fed. App'x at 495-96 (collecting cases).

Hott contends McConnell's video footage shows that he was constrained with his left hand behind his back and his right hand above the vehicle in a "submissive posture," leaving him unable to pose a danger. Doc. No. 39 at PageID 1905. McConnell's video conclusively establishes otherwise. McConnell Video 2. It reveals that Hott did not comply with McConnell's orders, and he loudly and actively resisted McConnell's attempts to handcuff his hands behind his back. *Id*. Even after McConnell tased Hott, he continued to yell as McConnell restrained him. *Id*. Because he "actively resist[ed] arrest and refus[ed] to be handcuffed," *Hagans,* 695 F.3d at 509, McConnell's split-second judgment to tase Hott constituted a reasonable use of force. Again, "it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff*, 791 F.3d at 641.

In sum, because the force McConnell used when securing and arresting Hott was objectively reasonable, qualified immunity shields him from Hott's claims that he violated Hott's rights under the Fourth, Fifth and Fourteenth Amendments. *See VanPelt v. City of Detroit*, 70 F.4th 338, 341 (6th Cir. 2023) ("Officer Layne's use of force was reasonable, and he did not violate [the plaintiff's] constitutional rights. Thus, Officer Layne is entitled to qualified immunity"). Summary judgment is therefore warranted in McConnell's favor. *See id*.

**B. Defendant Village of Mechanicsburg**

Hott claims the Village of Mechanicsburg is liable for McConnell's unconstitutional conduct. Doc. No. 39 at PageID 1911–20. He claims: (1) McConnell was an official policymaker with respect to drug enforcement (*id.* at PageID 1912); (2) the Chief, as the official policymaker for the Mechanicsburg Police Department, approved of McConnell's actions on the scene of the arrest and participated in, and completed, the arrest and detention (*id.* at PageID 1914); (3) there was a policy of inadequate supervision of McConnell (*id.* at PageID 1916); and (4) it acquiesced to, and tolerated, McConnell's past unconstitutional actions, inviting him to return despite his previous misconduct (*id.* at PageID 1918).

Hott's failure to show an underlying constitutional violation likewise means that his claims against the Village of Mechanicsburg cannot succeed. *See Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023) ("[T]here can be no liability under *Monell* without an underlying constitutional violation"); *Hunsperger v. Tuscarawas Cnty*., No. 5:22-cv-00326, 2024 WL 3992275, at *4 (N.D. Ohio Aug. 28, 2024) (and cases cited therein). Thus, the Village is entitled to summary judgment with respect to Hott's *Monell* claims. *See Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009).

## V. State-Law Claims

"Once a district court dismisses all of the claims over which it has original jurisdiction, it acts squarely within its discretion by declining supplemental jurisdiction over the remaining state law claims and dismissing them without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522–23 (6th Cir. 2011) (cleaned up) (citing 28 U.S.C. § 1367(c)(3)). To that end, the Sixth Circuit has held, "generally, once a federal court has dismissed a plaintiff's federal law claims, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (cleaned up) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, No. 3:18-cv-417, 2021 WL 718843, at *6 (S.D. Ohio Feb. 24, 2021). As explained above, McConnell is entitled to summary judgment on all of Hott's federal claims. His only remaining claims arise under state law. In these circumstances, declining to exercise supplemental jurisdiction over Hott's state-law claims is warranted. Accordingly, those claims merit dismissal without prejudice. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims, or remanding them to state court if the action was removed"); *see also United Mine Workers of Am.*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well"); *Aquilina v. Wrigglesworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (citation omitted) (In the interest of fairness, "a state court should have the opportunity to consider the merits of the Plaintiff's state law claim").

## VI. Conclusion

For the reasons stated herein, Defendants' motions for summary judgment (Doc. Nos. 32, 33) are **GRANTED** with respect to Hott's federal claims. Hott's state-law claims are

**DISMISSED WITHOUT PREJUDICE.** This case is **TERMINATED** on the docket.

**IT IS SO ORDERED.**

August 26, 2026

s/*Michael J. Newman*
Hon. Michael J. Newman
United States District Judge